**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MICHAEL LASANE, | |
| Plaintiff, | Civil Action No. 17-6316 (MAS) (DEA) |
| v. | **MEMORANDUM OPINION** |
| ANTONIO CAMPOS, et al., | |
| Defendants. | |

**SHIPP, District Judge**

This matter comes before the Court upon Gary Lanigan ("Lanigan"), Timothy Maines ("Maines") and Bob Pilat's ("Pilat") (collectively, "Moving Defendants") joint Motion to Dismiss ("Motion")[1] (Mot., Mar. 13, 2018, ECF No. 38), Plaintiff Michael Lasane's ("Plaintiff") Third Amended Complaint ("TAC") (TAC, Feb. 13, 2018, ECF No. 34). This matter also comes before the Court upon Plaintiff's Cross Motion for Preliminary Injunction ("Cross Motion"). (Cross Mot., Aug. 31, 2018, ECF No. 51.) For the reasons set forth below, the Court grants the Motion in part, and denies it in part. In addition, the Court denies the Cross Motion.

## I. PROCEDURAL BACKGROUND

On or about April 20, 2017, Plaintiff filed a civil complaint in state court. (Civil Compl. 39, ECF No. 1-2.) On August 22, 2017, the action was removed to federal court. (Notice of Removal, ECF No. 1.) Since then, Plaintiff has filed numerous motions to amend his complaint,

---

[1] Additional defendants have been served in this case, but have not yet responded to the summons. (Summons Issued, Dec. 19, 2018, ECF No. 65.) The additional defendants are not the subject of this Motion.

(*see* ECF Nos. 11, 12, 31), and Defendants have filed various motions to dismiss. (*See* ECF Nos. 4, 25, 28, 38.) Relevant here is Plaintiff's TAC, which Moving Defendants seek to dismiss. Plaintiff filed a *pro se* brief in opposition to the Motion (Pl.'s Opp'n Br., ECF No. 41), and Defendants filed a Reply (Defs.' Reply, ECF No. 43). On July 5, 2018, the Court appointed *pro bono* counsel for Plaintiff. (ECF No. 45.) On August 31, 2018, Plaintiff, through counsel, filed a Cross Motion for Preliminary Injunction and a Supplemental Opposition to Moving Defendants' Motion. (Cross Mot.) Defendants filed a response in opposition to the Cross Motion (Defs.' Resp. to Cross Mot., ECF No. 56) and Plaintiff filed a Reply (Pl.'s Reply to Defs.' Resp. to Cross Mot., ECF No. 59).

## II. FACTUAL BACKGROUND

The allegations raised by Plaintiff in the TAC are accepted as true for purposes of this Opinion. Plaintiff alleges that in 2008, a lawsuit was filed concerning the disrepair of certain housing units in New Jersey State Prison ("NJSP"). (TAC ¶¶ 18-19.) Defendants Antonio Campos ("Campos"), Maines, David Hoffman ("Hoffman"), and Lanigan relocated the inmates residing in those units to other housing units in NJSP, installing double occupancy beds "by converting bed platforms that were designed for single occ[u]pancy". (*Id.* ¶¶ 21-23.) Plaintiff maintains that the manufacturing of the double occupancy beds was defective. (*Id.* ¶ 28.) On December 17, 2014, Plaintiff was moved to the bottom bunk of a cell with a newly manufactured double occupancy bed. (*Id.* ¶¶ 35-38.) The next day, Plaintiff informed the unit officer that he was concerned about the defective construction of the bed and that he might become injured. (*Id.* ¶ 41.) The officer informed Plaintiff that he alerted Hoffman regarding Plaintiff's concerns. (*Id.* ¶¶ 41-43.) Plaintiff did not hear from Hoffman until March of 2015. (*Id.*)

Plaintiff alleges that in March of 2015, at approximately 10:45 P.M., he was sitting on the bottom bed with an inmate sitting in the bed above. (*Id.* ¶¶ 44-45.) "[W]ithout warning, one side of the top bed collapsed down onto the bottom bed platform grazing [P]laintiff's back and leaving several scratches." (*Id.*) Plaintiff informed his unit officer of the collapse, who then informed Hoffman. (*Id.* ¶¶ 50-53.) At approximately 9:30 A.M. the next morning, Pilat and Jayson Vreeland ("Vreeland") arrived with tools to repair the bed. (*Id.* ¶¶ 54-55.) After the repairs were completed, Plaintiff informed Pilat and Vreeland of further defects in the bed and explained to Pilat that he was concerned the bed still looked unstable. (*Id.* ¶¶ 61-62.) Pilat told Plaintiff to write to the prison administrator. (*Id.* ¶ 63.)

Following the collapsing incident, Plaintiff submitted inmate grievance forms asking to be moved to a different cell, and describing his fear of being injured. (*Id.* ¶ 68.) Plaintiff did not receive a response. (*Id.* ¶ 69.) Plaintiff also submitted correspondence to the administrator of NJSP expressing his concern about the collapse and asking to be moved to a single occupancy cell. (*Id.* ¶ 72.) In early April of 2015, Plaintiff received a response from Campos that his request to be moved was denied. (*Id.* ¶ 75.) Plaintiff also filed an institutional inquiry form requesting to be moved, but never received a response. (*Id.* ¶¶ 79-80.)

On April 29, 2015, at approximately 1:45 P.M., the bed collapsed a second time, hitting Plaintiff in the head and face, and knocking him to the floor. (*Id.* ¶¶ 81-82.) Plaintiff's forehead began to swell, he felt severe pain in his jaw and arm, and Plaintiff experienced blurred vision and ringing in his ears. (*Id.* ¶ 84.) Plaintiff informed the unit officer of the collapse, and the supervisor came to inspect the bed. (*Id.* ¶¶ 86-90.) Plaintiff was moved to a different cell that evening. (*Id.* ¶ 92.) Plaintiff sought an emergency medical pass, which was not issued. (*Id.* ¶¶ 94-95.)

On or about May 2, 2015, Plaintiff was screened by a nurse. (*Id.* ¶ 97.) The nurse noted Plaintiff's swelling and referred him to a physician. (*Id.* ¶¶ 98-99.) On May 3, 2015, the prison physician performed a "rudimentary" physical examination but failed to perform any additional examination or order any tests to determine the extent of injuries to Plaintiff's head. (*Id.* ¶¶ 100-01.) The physician prescribed Meclizine to treat Plaintiff's dizziness. (*Id.* ¶ 101.) The physician also ordered X-rays of Plaintiff's left arm and referred Plaintiff to a dentist. (*Id.* ¶¶ 101, 103.) Plaintiff received X-rays on May 7, 2015, and was referred for physical therapy. (*Id.* ¶¶ 104-05.) Plaintiff states that as a result of his injury, he "suffers from sharp pains from his left elbow to his wrist and his elbow is extremely sensitive to touch. He has also lost his ability to close his left hand completely." (*Id.* ¶ 106.) Plaintiff was told by the physical therapist that the pain in his arm is due to displacement of his ulna nerve, and that Plaintiff is unlikely to completely recover from his injury. (*Id.* ¶ 107.) Plaintiff states that as a result of the bed collapse, several of his teeth have loosened and shifted position. (*Id.* ¶ 109.) He suffers from pain in his jaw rendering him unable to chew or eat regularly. (*Id.* ¶ 110.)

On or about May 18, 2015, Plaintiff was seen by a prison dentist. (*Id.* ¶ 111.) The dentist took X-rays, prescribed antibiotics, and referred Plaintiff to an oral surgeon. (*Id.* ¶ 114.) Between May 2015 and February 2016, Plaintiff had sporadic visits with prison dentists, but was not seen by an oral surgeon. (*Id.* ¶ 116.)

On or about February 9, 2016, Plaintiff was seen by Defendant Dr. Lopez, D.D.S. ("Lopez"), regarding Plaintiff's jaw pain. (*Id.* ¶ 117.) Lopez took X-rays and discussed the possibility of extracting two of Plaintiff's teeth. (*Id.* ¶¶ 120-22.) Plaintiff requested to have his teeth restored to their original state before the injury. (*Id.* ¶ 123.) Lopez responded "[w]e don't do that type of thing here" because it is a cosmetic procedure which is not allowed under prison

4

policy. (*Id.* ¶¶ 123-25.) Plaintiff requested to be seen by an oral surgeon or orthodontist, to which Lopez explained that no further resources would be expended on Plaintiff as he received a surgical procedure in 2007 to remove a maxillary cyst in his upper jaw. (*Id.* ¶ 128.)

Plaintiff avers that he suffers from an "inability to eat properly, unrelenting pain and mental distress caused by Defendant Lopez's refusal to treat his injuries." (*Id.* ¶ 130.) Plaintiff submitted various grievances, institutional inquiries, and medical requests. (*Id.* ¶¶ 131-39.) In late 2016, and early 2017, Defendant was seen twice by Lopez. (*Id.* ¶¶ 141-49.) Lopez took X-rays, offered to extract Plaintiff's teeth, but again refused to refer Plaintiff for additional treatment. (*Id.*)

Plaintiff states that on July 3, 2017,[2] he submitted an institutional grievance to the administrative offices of NJSP advising that he had been injured by a defective bed. (*Id.* ¶ 153.) Plaintiff also requested that the continued use of the beds be addressed. (*Id.*) In July of 2015, he received a response from Maines stating: "All beds are installed per standards set forth by the manufacturer with regard to [its] intended use." (*Id.* ¶ 155.) Plaintiff appealed, and asked that he not be forced to use the beds again. (*Id.* ¶ 157.) Plaintiff received a response that the bed collapse was the result of a "broken post." (*Id.* ¶ 158.)

## III. LEGAL STANDARD

In resolving a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure[3] 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210

---

[2] While Plaintiff writes that this occurred in 2017, it appears from his attached exhibit that this occurred in 2015. (*See* TAC, Ex. B., ECF No. 34 at 40.)

[3] All references to rules hereinafter reference the Federal Rules of Civil Procedure.

5

(3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Furthermore, *pro se* pleadings are liberally construed. *See Glunk v. Noone*, 689 F. App'x 137, 139 (3d Cir. 2017). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

## IV. ANALYSIS

The Third Amended Complaint includes the following causes of action: (1) injuries resulting from dangerous conditions under N.J.S.A. 59:4-2; (2) denial of reasonably safe prison conditions under the Eighth Amendment and the New Jersey Civil Rights Act ("NJCRA"); and (3) denial of adequate medical care under the Eighth Amendment and the NJCRA. (TAC ¶¶ 160-81.) Moving Defendants seek to dismiss the TAC as time-barred, because Plaintiff fails to state a claim for relief, and because Moving Defendants are immune from suit. (*See generally* Mot.)

### A. Timeliness

Moving Defendants contend that Plaintiff's claims are barred by the statute of limitations. (Mot. 14-16.) The Court disagrees. Federal courts look to state law to determine the limitations period for [Section] 1983 actions. *Wallace v. Kato*, 549 U.S. 384, 387-88 (2007). Civil rights or

6

constitutional tort claims are best characterized as personal injury actions and are governed by the applicable state's statute of limitations for personal injury actions. *Estate of Lagano v. Bergen Cty. Prosecutor's Office*, 769 F.3d 850, 859 (3d Cir. 2014). Under New Jersey law, an action for an injury caused by a wrongful act, neglect, or default must be commenced within two years of accrual of the cause of action. N.J.S.A. 2A:14-2; *Lagano*, 769 F.3d at 859. Thus, New Jersey's two-year limitations period on personal injury actions governs Plaintiff's claims here. *Id.*

Plaintiff's original complaint, which is attached as an appendix to the notice of removal to federal court, is dated April 20, 2017. (*See* Civil Compl. 39.) Pursuant to the prisoner "mailbox rule," Plaintiff's filings are deemed filed on the date he delivered them to prison officials for mailing. *See Houston v. Lack*, 487 U.S. 266, 270-71 (1988); *see also Terrell v. Benfer*, 429 F. App'x 74, 75 n.1 (3d Cir. 2011) (using date prisoner signed document for purposes of prisoner "mailbox rule."); *Bond v. VisionQuest*, 410 F. App'x 510, 514 (3d Cir. 2011) (extending prisoner mailbox rule to filing of *pro se* prisoner complaints). Thus, any events that transpired after April 20, 2015, namely, the second bed collapsing incident, and the follow-up medical care, would be timely. Furthermore, because Plaintiff appears to allege a continuing violation stemming from the defective construction of the beds, his claims may fall under the continuing violations doctrine. *See Beckett v. Pa. Dep't of Corr.*, 597 F. App'x 665, 667 (3d Cir. 2015) ("The continuing violations doctrine is an equitable exception to the limitations period, which provides that, 'when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period.'") (quoting *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001)). For these reasons, the claims are not barred by the statute of limitations.

### B. <u>Official Capacity Claims</u>

Moving Defendants contend that they are immune from liability under federal law. Plaintiff sues the Moving Defendants in their official and individual capacities for damages and injunctive relief. (*See* TAC ¶¶ 3, 5, 7, p. 35.) It is well established that "[s]tate officers sued for damages in their official capacity are not 'persons'" under Section 1983. *Hafer v. Melo*, 502 U.S. 21, 27 (1991); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Plaintiff's Section 1983 claims for *damages* against the Defendants in their *official capacities*, accordingly, are dismissed with prejudice.

### C. <u>Conditions of Confinement</u>

Moving Defendants assert that Plaintiff fails to state a valid conditions of confinement claim because he fails to demonstrate that the Moving Defendants acted with deliberate indifference. (Mot. 25-26.) The Eighth Amendment right against cruel and unusual punishment extends to the conditions of an inmate's confinement. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). To prevail on a conditions of confinement claim, an inmate must be able to allege: "(1) the prison official deprived the prisoner of the minimal civilized measure of life's necessities; and (2) the prison official acted with deliberate indifference in doing so, thereby exposing the inmate to a substantial risk of serious damage to [his] future health." *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 226 (3d Cir. 2015) (citation omitted). Lanigan and Maines maintain that Plaintiff "has not plead any facts establishing deliberate indifference on the[ir] part . . . because there are no facts indicating that either Defendant had any actual or constructive knowledge of the condition of Plaintiff's bed." (Mot. 25-26.) Pilat maintains that because he attempted to repair Plaintiff's bed, Plaintiff cannot establish that he acted with deliberate indifference. (*Id.* at 26.) The Court disagrees and will deny Moving Defendants' Motion on this ground.

8

With respect to Maines and Lanigan, contrary to their assertions, Plaintiff details numerous instances in which he complained to prison officials about the defective bed construction. Plaintiff's complaints began prior to the first collapsing incident, and continued—by way of grievances, letters and inquiries—until he was eventually moved to a different prison cell. (*See* TAC ¶¶ 41-92.) Furthermore, Plaintiff alleges that Maines has "final authority concerning housing and cell assignments" and that Lanigan, as Commissioner of NJSP, is responsible for all rules and policies of the institution. (*Id.* ¶¶ 3, 7.) *See Santiago v. Warminster Twp.*, 629 F.3d 121, 129 (3d Cir. 2010) ("[A] supervisor may be personally liable . . . if he or she participated in violating the plaintiff's rights, directed others to violate them, or, *as the person in charge, had knowledge of and acquiesced in his subordinates' violations*.") (quotation marks and citation omitted) (emphasis added). Discovery may, of course, reveal that Maines and Lanigan were either unaware of Plaintiff's numerous complaints or were uninvolved in the placement of inmates in the dual occupancy cells. At the motion to dismiss stage, however, Plaintiff pleads sufficient facts to state a plausible conditions of confinement claim against Maines and Lanigan.

With respect to Pilat, Plaintiff avers that he communicated his concerns about the defective bed repair, which fell on deaf ears. (*See* TAC ¶¶ 61-63.) Once again, at this stage of the proceeding, the Court finds sufficient facts to state a plausible conditions of confinement claim against Pilat. As such, the Motion is denied on this ground.

### D. **Inadequate Medical Care**

Lanigan maintains that the inadequate medical care claims against him should be dismissed because Plaintiff has not demonstrated that Lanigan had actual or constructive knowledge of

Plaintiff's dental condition.[4] (Mot. 27.) Plaintiff responds, "[g]iven Lanigan's role as DOC Commissioner and his supervisory responsibilities over medical care provided by the DOC, Lanigan does not need to be specifically aware of Lasane's condition to be subject to liability." (Cross Mot. 28.) The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). In order to set forth a cognizable claim for a violation of adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *Estelle*, 429 U.S. at 106. Deliberate indifference is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. *Farmer*, 511 U.S. at 836.

Typically, non-medical prison officials "who are not themselves physicians cannot 'be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor.'" *Davis v. Norwood*, 614 F. App'x 602, 605 (3d Cir. 2015) (quoting *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993)). Prison officials may, however, be deliberately indifferent, if they have "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner[.]" *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004).

Here, even assuming Plaintiff's dental needs were serious, Plaintiff fails to allege sufficient facts which would establish that Lanigan was deliberately indifferent to Plaintiff's dental needs. According to the TAC, Plaintiff was seen by prison dentists on numerous occasions, received X-rays of his teeth, was prescribed antibiotics, and was offered to have certain teeth extracted.

---

[4] Plaintiff also raises inadequate medical care claims against various other defendants who are not the subject of this Motion.

(TAC ¶¶ 111-49.) Thus, the facts, as alleged, indicate that Plaintiff was being treated for his dental needs. *See Spruill*, 372 F.3d at 226 ("If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands."). While Plaintiff alleges that he filed grievances and institutional inquiries requesting to be seen by an oral surgeon and to receive restorative dental care, Plaintiff fails to indicate if any of his correspondence was directed to Defendant Lanigan. *See Iqbal*, 556 U.S. at 676 ("A plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.") Even assuming Lanigan did have knowledge of the grievances, that alone is still insufficient to demonstrate deliberate indifference on Lanigan's part. *See Durmer*, 991 F.2d at 69 (providing that non-medical prison officials are not deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor.") Here, because Plaintiff was being treated by prison dentists, and the facts supplied in the TAC fail to indicate that Lanigan had knowledge regarding or acquiesced to any alleged mistreatment, the Court grants the Motion as to Lanigan on Plaintiff's inadequate medical care claim.[5]

### E. Remaining Arguments

Moving Defendants argue that they are entitled to qualified immunity. Because any inquiry into qualified immunity is necessarily a fact-intensive inquiry, the Court declines to grant the Motion at this early stage, prior to discovery, on grounds of qualified immunity. *See Newland v. Reehorst*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009) ("[I]t is generally unwise to venture into a

---

[5] To the extent Moving Defendants seek to dismiss Plaintiff's claims under the NJCRA, because "[t]his district has repeatedly interpreted NJCRA analogously to [Section] 1983," the Court's analysis is controlling with respect to all the claims addressed in this Opinion. *See Pettit v. New Jersey*, No. 09-3735, 2011 WL 1325614, at *3 (D.N.J. Mar. 30, 2011).

11

qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases."); *Coles v. Carlini*, No. 10-6132 (JBS), 2012 WL 1079446, at *9 (D.N.J. Mar. 29, 2012) ("[T]he qualified immunity analysis is typically inappropriate for motions to dismiss"). Moving Defendants also argue that Plaintiff is unable to assert a viable state law claim related to the defective construction of his bed. Given that the Court has already denied the Motion on Plaintiff's Eighth Amendment conditions of confinement claim, the Court is disinclined to grant the Motion on Plaintiff's related state law claim. The Motion is, therefore, denied on grounds of qualified immunity, and denied on Plaintiff's state law claim.

### F.  Cross Motion for Preliminary Injunction

Plaintiff's Cross Motion requests "a consultation with an oral surgeon and orthodontist and to be treated in accordance with their professional recommendations." (Cross Mot. 30-31.) A request for injunctive relief in the prison context must be "viewed with considerable caution." *Rush v. Corr. Med. Servs., Inc.*, 287 F. App'x 142, 144 (3d Cir. 2008). A party seeking a preliminary injunction must show: (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in irreparable harm to the nonmoving party; and (4) that the public interest favors such relief. *Id.* (citing *NutraSweet Co. v. Vit-Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999)). "A Court will consider all four factors, but the first two are essential." *Leddy v. N. Valley Reg'l High Sch. Dist.*, No.17-5245, 2017 WL 3923291, at *7 (D.N.J. Sept. 6, 2017).

Here, Plaintiff fails to demonstrate irreparable harm. "[A] showing of irreparable harm is insufficient if the harm will occur only in the indefinite future. Rather, the moving party must make a clear showing of *immediate* irreparable harm.'" *Rivera v. Pa. Dep't of Corr.*, 346 F. App'x 749, 750 (3d Cir. 2009) (emphasis in original) (quoting *Campbell Soup Co. v. ConAgra, Inc.*, 977

F.2d 86, 91 (3d Cir. 1992)). Here, Plaintiff's dental complaints date back to the second bed collapsing incident in 2015, more than two years before the Cross Motion was filed. Thus, there is nothing to indicate that the immediate failure to be seen by an oral surgeon or an orthodontist will result in irreparable harm to Plaintiff. *See Montgomery v. Aparatis Dist. Co.*, No. 13-5382, 2014 WL 1340033, at *8 (D.N.J. Apr. 1, 2014) ("Courts have been reluctant to accept inmate invitations to use preliminary injunctions as a means to judicially prescribe specific medical courses of treatment for prisoners, and have typically declined such requests citing the inmate's failure to demonstrate irreparable harm.") (citations omitted); *Watkins v. Merriel*, No. 12-4851, 2013 WL 5435322, at *4 (D.N.J. Sept. 27, 2013) ("a plaintiff must point to an *imminent* risk of irreparable injury . . .") (citing *Hynoski v. Columbia Cty. Redevelopment Auth.*, 485 F. App'x 559, 563 (3d Cir. 2012) (emphasis in original). Because Plaintiff must demonstrate more than a risk of irreparable harm to be granted injunctive relief, Plaintiff's Cross Motion is denied without prejudice.

## V. CONCLUSION

For the foregoing reasons, the Moving Defendants' joint Motion to Dismiss Plaintiff's Third Amended Complaint is **GRANTED IN PART AND DENIED IN PART**. The Court **GRANTS** the Motion in favor of Lanigan on Plaintiff's claim for inadequate medical care. The Court **DENIES** the Motion on Plaintiff's conditions of confinement claim and related state law claim. Plaintiff's claims for damages against Lanigan, Maines, and Pilat in their official capacities are **DISMISSED WITH PREJUDICE**. Plaintiff's inadequate medical care claim against

Lanigan is **DISMISSED WITHOUT PREJUDICE**. In addition, the Court **DENIES** Plaintiff's Cross Motion for injunctive relief. An appropriate order follows.

s/ Michael A. Shipp<br>
**MICHAEL A. SHIPP**<br>
**UNITED STATES DISTRICT JUDGE**

Dated: February 27, 2019